IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:18-cv-00007

MARCIA HARTEN, an individual,

    Plaintiff,

v.

TELCO CREDIT UNION,
A credit union,

    Defendant.

**COMPLAINT FOR VIOLATION OF AMERICANS WITH DISABILITIES ACT**

Plaintiff Marcia Harten, by and through her undersigned counsel, for her Complaint against Defendant Telco Credit Union ("TCU"), states as follows:

## NATURE OF THE ACTION

1. This is an action for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq*. Specifically, Plaintiff alleges that TCU has violated, and continues to violate, the ADA by constructing and maintaining a commercial website, www.telcu.com, that is not accessible to the blind and visually-impaired who, like Plaintiff, have attempted to access telcu.com.

## JURISDICTION

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq*.

3. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1)-(3) because Defendant's principal place of business is located in Tarboro, North Carolina, in this District and in the Eastern Division of this District, and because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## THE PARTIES

4. Plaintiff is an adult resident of North Carolina. Plaintiff is permanently blind and uses a screen reader in order to access the internet and read website content. Despite several attempts to use and navigate TCU's website, www.telcu.com, Plaintiff has been denied the full use and enjoyment of the facilities and services of telcu.com as a result of accessibility barriers on telcu.com. The access barriers on telcu.com have caused a denial of Plaintiff's full and equal access multiple times. Similarly, the access barriers on telcu.com have deterred Plaintiff from visiting TCU's credit union locations.

5. Plaintiff is informed and believes, and thereon alleges, that TCU is a credit union with its principal place of business located in Tarboro, North Carolina.

6. Plaintiff is informed and believes, and thereon alleges, that TCU owns and operates credit union locations in North Carolina.

7. TCU's credit union locations constitute places of public accommodation. TCU's locations provide to the public important goods and/or

2

services.

8. TCU also provides to the public the telcu.com website. Telcu.com provides access to TCU's array of services, including a locator for the TCU facilities, information that enables a person without an account to learn what services TCU has to offer potential customers including descriptions of its amenities and services that enable a user to obtain general information about particular topics and specific information about what TCU offers, and many other benefits related to these facilities and services.

9. The TCU locations are public accommodations within the definition of Title III of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181(7). Telcu.com is a service, privilege, advantage, and accommodation of the TCU locations. Telcu.com is a service, privilege, advantage, and accommodation that is heavily integrated with these locations.

10. The TCU locations and Telcu.com are operated by TCU and these operations affect commerce. Specifically, TCU is engaged in the business of banking and financial transactions. The TCU locations and Telcu.com enable patrons to participate in banking and financial transactions in person or online.

11. TCU and the TCU locations are banks within the meaning of ADA § 36.104.

12. TCU offers Telcu.com to the public as a means of interacting with TCU

3

and transacting business by and through the TCU locations. Patrons accessing Telcu.com are indirectly and directly interacting with the TCU locations and other brick-and-mortar locations.

13. At all times relevant to the Complaint, TCU was acting through its agents, servants and/or employees.

14. At all times relevant to the Complaint, TCU was a duly formed North Carolina federally insured state-charted credit union.

## FACTUAL BACKGROUND

### A. Applicability of the ADA to Commercial Websites

15. The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

16. Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen. Screen access software provides the only method by which a blind person may independently access the internet. Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services contained thereon.

17. The international website standards organization, W3C, has published

4

version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic components for making websites accessible including, but not limited to: adding invisible alternative text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

18. Within this context, numerous federal courts have recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites. *See, e.g.*, *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, 2017 WL 3278898, at *12, *15-*18 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, slip op. at 4-6 [ECF #33] (S.D.N.Y. July 21, 2017); *Gorecki v. Hobby Lobby Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736 (C.D. Cal. June 15, 2017) (Walter, J.) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("[T]his is a relatively straightforward claim that Hobby Lobby failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible

5

Case 4:18-cv-00007-D   Document 1   Filed 01/26/18   Page 5 of 15

website. There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts--including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.*, No. 16-23020-Civ-Scola, -- F. Supp. 3d --, 2017 WL 2547242, at *7 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial); *Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS (Lead Case), 17cv0031 [ECF #107], slip op. at 20 (W.D. Pa. Apr. 21, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website); *Frazier v. Churchill Downs Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:16-cv-0007 (Member Case) [ECF #107] slip op. at 20 (W.D. Pa. Apr. 21, 2017) (same); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [ECF #9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:17-cv-00269-AJS (Member Case) [ECF #99] (W.D. Pa. Apr. 11, 2017) (same); *Gil v. Winn-Dixie Stores, Inc.*, -- F. Supp. 3d --, No. 16-23020-Civ-Scola, 2017 WL 2609330 (S.D. Fla. Mar. 15, 2017) (denying a motion for judgment on the pleadings sought against an ADA claim alleging an inaccessible commercial website); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016

6

WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.)(recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15-cv-30024-MGM, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, slip op. at 10 [ECF #17] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.) (denying motion to dismiss in a website accessibility case) ("the Court concludes that the Complaint sufficiently alleges that the inaccessibility of the Website impedes the full and equal enjoyment of the Hotel."); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 98 F. Supp.3d 565, 576 (D. Vt. 2015) (denying a motion to dismiss an ADA claim against a commercial website operator); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx) slip op. at 4-7 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Krondstadt, J.) (denying the defendant's motion to dismiss while relying on the *Target* decision as "persuasive", and holding "the Complaint does allege that Bass Pro Shops is a chain of brick-and-mortar stores and that BassPro.com is a website providing information about Bass Pro Shops products, offers, and locations.... [and that] a nexus could be established here through discovery."); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [ECF #12] slip op. at 3 (C.D. Cal. Sept. 23, 2014) (Carney, J.) (denying a motion to dismiss and stating, "Thus, the Complaint states plausible facts that establish the requisite nexus between the challenged service and the place

7

of public accommodation."); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public"); *id.* at 200-01 ("[T]he legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology.") (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites and stating, "The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *id.* at 953-54 ("consistent with the plain language of the statute, no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation. Further, it is clear that the purpose of the statute is broader than mere physical access—seeking to

bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. *See* 42 U.S.C. § 12182(b)(1)(A)."); *cf. Hindel v. Husted*, No. 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (granting a motion for preliminary injunction against the Ohio Secretary of State based on the accessibility of the state's website under Title II of the ADA and requiring conformance with WCAG 2.0 Level A and AA Success Criteria).

### B. The Inaccessibility of TCU's Website to the Visually-Impaired

19. TCU offers the commercial website, telcu.com, which provides, among other things, information concerning the TCU locations it operates, information and descriptions of its amenities and services, privileges, advantages, and accommodations, and allows users to find the locations for them to visit.

20. Based on information and belief, it is TCU's policy and practice to deny blind users, including Plaintiff, equal enjoyment of and access to telcu.com. Due to TCU's failure and refusal to remove access barriers on telcu.com, Plaintiff and other blind and visually impaired individuals have been denied equal enjoyment of and access to the TCU locations and to the other services, advantages, privileges, and accommodations offered to the public through telcu.com.

21. TCU denies blind individuals equal enjoyment of and access to the services, privileges, advantages, and accommodations and information made available through telcu.com by preventing them from freely navigating telcu.com.

9

Telcu.com contains access barriers that prevented free and full use by blind persons using screen reading software.

22.     Telcu.com's barriers are pervasive and include, but are not limited to, the following: (1) Missing alternative text, which presents a problem because an image without alternative text results in an empty link. Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead a text box will pop-up when the mouse moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired TCU customers are unable to determine what is on the website, browse the site, look for the TCU locations, check out Defendant's amenities, and/or determine which location to visit; (2) Empty or missing form labels which presented a problem because if a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels provide visible descriptions and larger clickable targets for form controls; and (3) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users.

23.     Due to the inaccessibility of telcu.com, blind and otherwise visually impaired customers who use screen readers are hindered from effectively browsing

for TCU's locations, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users. If telcu.com were accessible, Plaintiff could independently and privately investigate TCU's services, privileges, advantages, and accommodations and amenities, and find the locations to visit via TCU's website as sighted individuals can and do.

24. Despite several attempts to use telcu.com in recent months, the numerous access barriers contained on TCU's website have denied Plaintiff's full and equal access, and deterred Plaintiff on a regular basis from accessing TCU's website. Similarly, based on the numerous access barriers contained on telcu.com, Plaintiff has been deterred from visiting TCU's physical locations that Plaintiff may have located by using telcu.com.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## Violations of the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq.*

25. Plaintiff incorporates by this reference the allegations contained in paragraphs 1 through 25 as if fully set forth herein.

26. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §

11

12182(a).

27. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden". 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely

manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

28. TCU's locations are "public accommodations" within the meaning of 42 U.S.C. § 12181 *et seq*. TCU generates millions of dollars in revenue from the sale of its amenities and services, privileges, advantages, and accommodations through its locations in North Carolina and related services, privileges, advantages, and accommodations and telcu.com. Telcu.com is a service, privilege, advantage, and accommodation provided by TCU that is inaccessible to patrons who are visually-impaired like Plaintiff. This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that TCU made available to the non-disabled public. TCU is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that TCU denies visually-impaired customers the services, privileges, advantages, and accommodations provided by telcu.com. These violations are ongoing.

29. TCU's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. in that: TCU has constructed a website that is inaccessible to Plaintiff; maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

30. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

13

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant Telco Credit Union as follows:

1. For preliminary and permanent injunctive relief pursuant to 42 U.S.C. § 12188(a)(1) and (2), requiring TCU to take the steps necessary to make telcu.com readily accessible to and usable by visually-impaired individuals;

2. For attorneys' fees and expenses;

3. For costs of suit; and

4. For such other and further relief as the Court deems just and proper.

Respectfully submitted this 26th day of January, 2018

/s/ *Marty E. Miller*
Marty E. Miller
Cary Law
Post Office Box 3525,
Cary, NC 27519
Phone: (919) 462-1640
Facsimile: (919) 462-1641
Marty@CaryLawNC.pro
State Bar No. # 22215
Local Civil Rule 83.1(d) Counsel

/s/ *Scott J. Ferrell*
/s/ *Victoria Knowles*
Scott J. Ferrell, Esq.
Victoria Knowles, Esq.
Pacific Trial Attorneys
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469
sferrell@pacifictrialattorneys.com
vknowles@pacifictrialattorneys.com

*Attorneys for Plaintiff*

15